McGEE, Chief Judge.
 

 *438
 
 I.
 
 Supplemental Factual and Procedural Background
 

 [1]
 

 Claimant Davis ("Claimant") was involuntarily sterilized in 1946. Claimant makes three arguments on appeal: (1) that her involuntary sterilization "had to be performed under Public Law 1933, Chapter 224 in order to be performed lawfully," (2) that the full panel of the Industrial Commission's ("Full Commission") "strict construction of N.C. Gen. Stat. § 143B-426.50(5) constitute[d] denial of compensation benefits to [her] due to an overly strict and technical construction of the statute[,]" and (3) the "[Full] Commission violated [her] constitutional rights to equal protection and fundamental fairness by denying compensation" based upon a lack of record evidence of the involvement of the North Carolina Eugenics Board ("Eugenics Board").
 

 This matter was first decided by this Court on 15 March 2016.
 
 Maye I
 
 , --- N.C. App. ----,
 
 784 S.E.2d 237
 
 . In
 
 Maye I
 
 , we held that Claimant could not demonstrate that she was a qualified recipient of compensation pursuant to the Eugenics Asexualization and Sterilization Compensation Program ("Compensation Program") based upon our prior opinion in
 
 In re House
 
 , --- N.C. App. ----,
 
 782 S.E.2d 115
 
 (2016) ("
 
 House I
 
 ") and, for this reason, overruled her first two arguments. By order entered on 28 September
 
 *371
 
 2017 ("Remand Order"), our Supreme Court granted Claimant's petition for discretionary review, along with three additional petitions from different claimants, stating:
 

 The petitions for discretionary review ... are allowed for the limited purpose of reversing the Court of Appeals' dismissal of claimants' constitutional claims. These cases are remanded to the Court of Appeals for expedited consideration of the constitutional claims on the merits.
 
 See
 

 In re Redmond
 
 ,
 
 369 N.C. 490
 
 , 497,
 
 797 S.E.2d 275
 
 , 280 (2017) [ ("
 
 Redmond II
 
 ") ] ("When an appeal lies directly to the Appellate Division from an administrative tribunal, ... a constitutional challenge may be raised for the first time in the Appellate Division as it is the first destination for the dispute in the General Court of Justice.").
 

 *439
 
 II.
 
 Analysis
 

 1.
 
 Non-Constitutional Arguments
 

 Claimant's first two arguments do not involve constitutional questions and, therefore, fall outside the mandate of the Remand Order. This Court's opinion in
 
 Maye I
 
 has therefore not been overruled with respect to Claimant's first two arguments. For the reasons stated in an opinion,
 
 In re House
 
 , --- N.C. App. ----,
 
 808 S.E.2d 325
 
 ,
 
 2017 WL 5580059
 
 (COA15-879-2) (2017) ("
 
 House II
 
 "), that is being filed concurrently with the present opinion, we again affirm the ruling of the Full Commission as it pertains to Claimant's first two arguments on appeal.
 

 2.
 
 Constitutional Argument
 

 Claimant further argues that "[t]o exclude from [the] restitution program similarly-situated victims of involuntary government sterilization whose records were not maintained in the State archives is to render the statute grossly under-inclusive in violation of" provisions of both the North Carolina Constitution and the United States Constitution. However, Claimant only included her first two arguments in her "Statement of Grounds for Appeal to the Full Commission," and those arguments do not include any constitutional claims. The Full Commission only addressed the two arguments before it in its 14 May 2015 Decision and Order. In addition, Claimant's "Proposed Issues on Appeal" only included her first two arguments. As we stated in
 
 Maye I
 
 ,
 

 there is no record evidence in the present case that Claimant[ ] presented this argument to the Industrial Commission, or brought it up in any manner prior to making it in [her] appellate brief[.] Nor did Claimant[ ] petition this Court for review of these matters. "Where a party appeals a constitutional issue from the Commission and fails to file a petition for
 
 certiorari
 
 or fails to have the question certified by the Commission, this Court is without jurisdiction."
 
 Myles v. Lucas & McCowan Masonry
 
 ,
 
 183 N.C. App. 665
 
 , 665,
 
 645 S.E.2d 143
 
 , 143 (2007) [ (citing
 
 Carolinas Med. Ctr. v. Employers & Carriers Listed In Exhibit A
 
 ,
 
 172 N.C. App. 549
 
 ,
 
 616 S.E.2d 588
 
 (2005) ) ]. Therefore, Claimant['s] constitutional argument[ ] must be dismissed.
 

 Maye I
 
 , --- N.C. App. ----, ----,
 
 784 S.E.2d 237
 
 .
 

 *440
 
 Our Supreme Court remanded this case for consideration of Claimant's constitutional argument pursuant to the following language in
 
 Redmond II
 
 :
 

 When an appeal lies directly to the Appellate Division from an administrative tribunal, in the absence of any statutory provision to the contrary,
 
 see, e.g.
 
 , N.C.G.S. § 150B-45(a), a constitutional challenge may be raised for the first time in the Appellate Division as it is the first destination for the dispute in the General Court of Justice.
 

 Redmond II
 
 ,
 
 369 N.C. at 497
 
 ,
 
 797 S.E.2d at 280
 
 . This language in
 
 Redmond II
 
 was used to reverse three opinions of this Court, all of which were initially decided in
 
 In re Hughes
 
 , --- N.C. App. ----,
 
 785 S.E.2d 111
 
 (2016) ("
 
 Hughes I
 
 ").
 
 [2]
 
 In
 
 Hughes I
 
 , this Court explained:
 

 because the Industrial Commission is not part of the judicial branch, it could not have made any determinations concerning
 
 *372
 
 a statute's constitutionality. For this reason, in their appeals from the decisions of the deputy commissioners, the attorneys representing the estates of Redmond and Smith included motions to certify the constitutional questions relevant to those appeals to this Court. The estate of Hughes, apparently operating without benefit of an attorney at the time, filed its appeal to the Full Commission without any motion to address the constitutional issues. The current attorney for the Hughes estate petitioned this Court for a writ of
 
 certiorari
 
 , which was granted 9 November 2015, in order to include the appeal of the Hughes estate along with those of the Redmond and Smith estates for consideration of their constitutional challenges.
 

 Id
 
 . at ----,
 
 785 S.E.2d at 116
 
 (citation omitted),
 
 rev'd on other grounds by
 

 Redmond II
 
 ,
 
 369 N.C. 490
 
 ,
 
 797 S.E.2d 275
 
 . It is unclear if our Supreme Court's holding in
 
 Redmond II
 
 applies to the present case because the claimants in
 
 Hughes I
 
 ,
 
 Redmond I
 
 , and
 
 Smith
 
 all made attempts to have their constitutional questions certified to this Court, whereas Claimant in the present matter made no attempt to pursue review of any constitutional issue pursuant to the two methods provided by statute, as recognized in
 
 Redmond II
 
 :
 

 *441
 
 Although not controlling on this Court,
 
 we note with approval
 
 the Court of Appeals' reasoning in a similar case. When the Industrial Commission determined in its opinion and award that certain changes to the Workers' Compensation Act violated the Due Process Clause ..., the Court of Appeals vacated the opinion and award, citing the "well-settled rule that a statute's constitutionality shall be determined by the judiciary, not an administrative board."
 
 Carolinas Med. Ctr. v. Emp'rs & Carriers
 
 ,
 
 172 N.C. App. 549
 
 , 553,
 
 616 S.E.2d 588
 
 , 591 (2005). In reaching this holding, the court reasoned that a party has at least two avenues to challenge the constitutionality of a statute. First, the party asserting the constitutional challenge may bring "an action under the Uniform Declaratory Judgment Act,
 
 N.C. Gen. Stat. § 1-253
 

 et seq.
 
 (2004)."
 
 Id
 
 . at 553,
 
 616 S.E.2d at 591
 
 ("A petition for a declaratory judgment is particularly appropriate to determine the constitutionality of a statute when the parties desire and the public need requires a speedy determination of important public interests involved therein."). "Alternatively, pursuant to
 
 N.C. Gen. Stat. § 97-86
 
 the Industrial Commission of its own motion could have certified the question of the constitutionality of the statute to this Court before making its final decision."
 

 Redmond II
 
 ,
 
 369 N.C. at 493-94
 
 ,
 
 797 S.E.2d at 278
 
 (citations omitted) (emphasis added).
 
 Carolinas Med. Ctr.
 
 also includes the following analysis concerning certification of questions of law to this Court:
 

 The Industrial Commission acknowledged this option in its decision in
 
 Carter v. Flowers Baking Co.
 
 , in which it held that "the Commission does not have the authority to find that enactments of the Legislature are unconstitutional[,]" and that:
 

 If the Commissioners feel strongly that a statute is unconstitutional and that it would clearly offend their oath to apply it, or that applying it would cause irreparable prejudice, or that the question would not otherwise be reviewed in the courts, etc., the Commission "may certify questions of law to the Court of Appeals for decision and determination" [pursuant to
 
 *442
 

 N.C. Gen. Stat. § 97-86
 
 ], which would "operate as a supersedeas except as provided in G.S. 97-86.1."
 

 Carolinas Med. Ctr.
 
 ,
 
 172 N.C. App. at 553
 
 ,
 
 616 S.E.2d at 591
 
 (citation omitted).
 

 We further note that in
 
 Carolinas Med. Ctr.
 
 , cited with approval in
 
 Redmond II
 
 , this Court
 
 dismissed
 
 the constitutional question argued on appeal, explaining that "[i]t is not the role of the appellate courts to render advisory opinions in matters that are not properly before them."
 
 Carolinas Med. Ctr.
 
 ,
 
 172 N.C. App. at 554
 
 ,
 
 616 S.E.2d at 592
 
 (citation omitted). This Court further held that the constitutional question was not properly before it because the constitutional matter had not been made part of a
 
 declaratory judgment action
 
 and, although "
 
 N.C. Gen. Stat. § 97-96
 
 allows this Court to consider questions of law certified to it by the Industrial Commission[,]" N.C.G.S. § 97-96 "does not presume to allow this Court to certify
 
 *373
 
 matters to itself for review and consideration. The provisions of Rule 2 are discretionary, and cannot be used to confer jurisdiction upon this Court in the absence of jurisdiction."
 
 Id
 
 . at 554,
 
 616 S.E.2d at 592
 
 (citation omitted). By citing
 
 Carolinas Med. Ctr.
 
 with approval, it is inferred that this Court was correct-or at least had the discretion-to refuse to consider, for the first time on appeal from an agency decision, a constitutional argument when
 
 no
 
 attempt had been made by the appellant to bring that argument forward at the lower tribunal. As stated in
 
 Carolinas Med. Ctr.
 
 , this Court considered the failure to utilize methods available at the trial level in order to address a constitutional issue to be a jurisdictional error.
 

 Id.
 

 The circumstances before us are in relevant ways the same as those in
 
 Carolinas Med. Ctr.
 

 This Court has regularly held that constitutional issues not raised before the Industrial Commission will not be heard for the first time on appeal.
 
 See
 

 Powe v. Centerpoint Human Servs.
 
 ,
 
 215 N.C. App. 395
 
 , 412,
 
 715 S.E.2d 296
 
 , 307 (2011) ;
 
 Myles
 
 ,
 
 183 N.C. App. at 665-66
 
 ,
 
 645 S.E.2d at
 
 143-44 (citing
 
 Carolinas Med. Ctr.
 
 ) (emphasis added) ("Where a party appeals a constitutional issue from the Commission and fails to file a petition for
 
 certiorari
 
 or fails to have the question certified by the Commission, this Court is without jurisdiction. In the instant case, there is no evidence in the record that the Commission has certified the question nor is there any evidence that a petition for
 
 certiorari
 
 was filed. Accordingly, we are
 
 without jurisdiction to hear this case
 
 . For the foregoing reasons, plaintiff's appeal is dismissed.").
 

 Unlike in the present case, the constitutional issues involved in our Supreme Court's opinion in
 
 Redmond II
 
 were raised before the
 
 *443
 
 Industrial Commission. In two of the cases addressed in
 
 Redmond II
 
 , the Industrial Commission, in its decisions and orders, explicitly stated that it was certifying those constitutional questions to this Court. In the third case we granted the claimant's petition for writ of
 
 certiorari
 
 . Therefore, it is unclear to this Court whether the holding in
 
 Redmond II
 
 is limited to situations where the constitutional issues had first been raised before the Industrial Commission, or had been included in a petition for writ of
 
 certiorari
 
 .
 
 [3]
 

 Therefore, we are uncertain how broadly we should interpret the following language from
 
 Redmond II
 
 :
 

 When an appeal lies directly to the Appellate Division from an administrative tribunal, in the absence of any statutory provision to the contrary,
 
 see, e.g.
 
 , N.C.G.S. § 150B-45(a), a constitutional challenge may be raised for the first time in the Appellate Division as it is the first destination for the dispute in the General Court of Justice.
 
 [4]
 

 Redmond II
 
 ,
 
 369 N.C. at 497
 
 ,
 
 797 S.E.2d at 280
 
 . If we interpret this language broadly, then we must conclude that this Court was wrong to dismiss the constitutional argument in
 
 Carolinas Med. Ctr.
 
 , despite the fact that
 
 Redmond II
 
 cites that opinion with approval,
 
 id.
 
 at 493-95,
 
 797 S.E.2d at 278
 
 , and that this Court is without authority or discretion to refuse to address the merits of any constitutional argument made for the first time on appeal, so long as that appeal is from a final agency decision.
 

 In an attempt to gain further clarity, we consider the right of appeal from agency decisions-including from decisions pursuant to the Compensation Program and other agency decisions. Pursuant to the Compensation Program, appeal was governed by
 
 *374
 

 *444
 
 N.C. Gen. Stat. § 143B-426.53 (2015).
 
 [5]
 
 A claimant first had to have a claim determined by a deputy commissioner based upon an application and supporting materials. N.C.G.S. § 143B-426.53(b). If the claim was denied, the claimant could then submit additional documentation to the deputy commissioner, and obtain additional review. N.C.G.S. § 143B-426.53(c). If the claim was again denied, claimant could then request a hearing before the deputy commissioner. N.C.G.S. § 143B-426.53(d). Upon a final denial by the deputy commissioner, the claimant could then appeal to the Full Commission for
 
 de novo
 
 review. N.C.G.S. § 143B-426.53(e). Finally, if the claim was denied by the Full Commission, the claimant could "appeal the decision of the [F]ull Commission to the Court of Appeals[.] Appeals under this section shall be in accordance with the procedures set forth in G.S. 143-293 and G.S. 143-294." N.C.G.S. § 143B-426.53(f).
 

 N.C. Gen. Stat. § 143-293
 
 is part of Article 31 of Chapter 143, known as the "Tort Claims Act," and states in relevant part that appeal to the Court of Appeals "shall be for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions[.]" N.C.G.S. § 143-293. The Industrial Commission, whether acting pursuant to the Tort Claims Act, the Worker's Compensation Act, the Compensation Program, or any other authority, is prohibited from ruling on constitutional questions.
 
 Redmond II
 
 ,
 
 369 N.C. at 493
 
 ,
 
 797 S.E.2d at 277
 
 (citations omitted) (the "judicial power [of the Industrial Commission] clearly does not extend to consideration of constitutional questions").
 

 However, the Rules of Appellate Procedure, including Rule 10, have been regularly applied to appeals from the Industrial Commission.
 
 See
 

 N.C. Gen. Stat. § 97-86
 
 (2015) ("appeal from the decision of [the] Commission to the Court of Appeals for errors of law under the same terms and conditions as govern appeals from the superior court to the Court of Appeals in ordinary civil actions. The procedure for the appeal shall be as provided by the rules of appellate procedure.");
 
 N.C. Gen. Stat. § 105-345
 
 (d) (2015) (appeal from Property Tax Commission shall be to the Court of Appeals and "[t]he procedure for the appeal shall be as provided by the rules of appellate procedure");
 
 Viar v. N.C. Dep't of Transp.
 
 ,
 
 359 N.C. 400
 
 ,
 
 610 S.E.2d 360
 
 (2005) (Court of Appeals should have dismissed appeal in action brought pursuant to Tort Claims Act for violations of Rule 10 and Rule 28 of the Rules of Appellate Procedure );
 
 Brooks, Comr. of Labor v. Grading Co.
 
 ,
 
 303 N.C. 573
 
 , 591,
 
 281 S.E.2d 24
 
 , 35 (1981) (in opinion considering appeal from a final agency decision,
 
 *445
 
 our Supreme Court admonished: "We remind counsel that the Rules of Appellate Procedure are mandatory and failure to comply invites dismissal of the appeal.").
 

 Our Supreme Court has regularly held that constitutional arguments not brought forth at the lower court level will be dismissed on appeal pursuant to Rule 10(a)(1).
 
 See, e.g.,
 

 State v. Goss
 
 ,
 
 361 N.C. 610
 
 , 622,
 
 651 S.E.2d 867
 
 , 875 (2007) ;
 
 State v. Roache
 
 ,
 
 358 N.C. 243
 
 , 284,
 
 595 S.E.2d 381
 
 , 408 (2004) (defendant failed to raise constitutional error at the trial court; therefore, pursuant to Rule 10(a)(1) it was not preserved for appellate review);
 
 State v. Call
 
 ,
 
 349 N.C. 382
 
 , 410,
 
 508 S.E.2d 496
 
 , 514 (1998) ;
 
 State v. Jaynes
 
 ,
 
 342 N.C. 249
 
 ,
 
 464 S.E.2d 448
 
 (1995).
 

 Based upon the following language, it is possible that
 
 Redmond II
 
 , at least concerning constitutional questions, has overruled the applicability of certain of our Rules of Appellate Procedure to appeals from administrative tribunals-or perhaps has concluded that these rules have never applied with respect to constitutional issues not brought forth before administrative tribunals in the first instance:
 

 That the Commission is not a court, but an administrative agency of the State with statutorily limited judicial authority, also makes distinguishable our prior reasoning in cases like
 
 City of Durham v. Manson
 
 ,
 
 285 N.C. 741
 
 , 743,
 
 208 S.E.2d 662
 
 , 664 (1974) ("[I]n conformity with the well established rule of appellate courts, we will not pass upon a constitutional question unless
 
 *375
 
 it affirmatively appears that such question was raised and passed upon in the court below." (italics omitted) (quoting
 
 State v. Jones
 
 ,
 
 242 N.C. 563
 
 , 564,
 
 89 S.E.2d 129
 
 , 130 (1955) )), and
 
 State v. Cumber
 
 ,
 
 280 N.C. 127
 
 , 132,
 
 185 S.E.2d 141
 
 , 144 (1971) ("Having failed to show involvement of a substantial constitutional question which was raised and passed upon in the trial court and properly brought forward for consideration by the Court of Appeals, no legal basis exists for this appeal to the Supreme Court, and it must therefore be dismissed."). As we have established already, the Commission has no authority to decide constitutional questions, making the rule announced in these cases inapplicable to whether the Court of Appeals may consider the constitutional question raised in this case.
 

 Redmond II
 
 ,
 
 369 N.C. at 496
 
 ,
 
 797 S.E.2d at 279
 
 . Because we lack certainty concerning whether failure to bring forth constitutional arguments at
 
 *446
 
 the trial level in the first instance-even when the tribunal is an administrative agency-constitutes a jurisdictional defect as stated in
 
 Carolinas Med. Ctr.
 
 , or whether this Court, when considering an appeal from an administrative tribunal, retains any discretion pursuant to Rule 10(a)(1) to refuse to address constitutional issues not first argued at the trial level, we make the following holdings in the alternative.
 

 a. Rule 10(a)(1)
 

 Because this Court is uncertain whether Rule 10(a)(1) applies to Claimant's constitutional argument in light of
 
 Redmond II
 
 , we first make an
 
 arguendo
 
 holding applying Rule 10(a)(1). N.C.G.S. § 143-293 ("appeal shall be for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions"). Assuming,
 
 arguendo
 
 , that Rule 10(a)(1) applies to Claimant's constitutional argument, we hold that Claimant has not preserved her constitutional issue for appellate review, and we dismiss it.
 
 Carolinas Med. Ctr.
 
 ,
 
 172 N.C. App. at 554
 
 ,
 
 616 S.E.2d at 592
 
 . If dismissal of Claimant's constitutional argument is proper pursuant to Rule 10(a)(1), then only the following language in
 
 Maye I
 
 has been overruled:
 

 Further, to the extent, if any, that Claimants' arguments contain a facial challenge to any statute based upon an alleged violation of the North Carolina Constitution or of federal law, this Court has held that it does not have jurisdiction to decide those matters.
 
 See
 

 In re Hughes
 
 , --- N.C. App. ----, [785] S.E.2d [111] (2016).
 

 Maye I
 
 , --- N.C. App. ----, ----,
 
 784 S.E.2d 237
 
 . The remainder of this Court's opinion in
 
 Maye I
 
 would remain undisturbed.
 

 b. Eugenics Board Records
 

 Assuming,
 
 arguendo,
 
 this Court is required by
 
 Redmond II
 
 to address the merits of Claimant's constitutional argument, we hold that her argument fails to state a cognizable constitutional claim. Claimant argues:
 

 By requiring that a sterilization victim must have documentation in the Eugenics Board archives in order to be compensated under the [Compensation Program], the Industrial Commission created a classification which makes the Act "grossly under-inclusive" as it "does not include all who are similarly situated"-a construction which undercuts any claims that the requirement serves a legitimate State interest, and thus violates [Claimant's] constitutional rights to equal protection and fundamental fairness.
 

 *447
 
 Initially, Claimant does not demonstrate that the underlying premise of her argument is based in fact or law. Claimant directs this Court to nothing in the Compensation Program that requires a claimant to produce documentation from the Eugenics Board in order to prosecute a successful claim for compensation. The requirements for proving entitlement to compensation were set forth in N.C. Gen. Stat. § 143B-426.52 (2015):
 

 (a) An individual shall be entitled to compensation as provided for in this Part if a claim is submitted on behalf of that individual in accordance with this Part ... on or before June 30, 2014,
 
 and that individual is subsequently determined by a preponderance of the evidence to be a qualified recipient
 
 [.]
 

 ....
 

 (d) The Commission shall adopt rules for the determination of eligibility and the processing
 
 *376
 
 of claims in accordance with G.S. 150B-21.1.
 

 N.C.G.S. § 143B-426.52. The Industrial Commission adopted temporary rules, effective 3 December 2013, for the determination of eligibility. 4 N.C.A.C. 10K.0101
 
 et seq.
 
 These rules include no requirement that a claimant produce documentation from the Eugenics Board in order to be determined eligible for compensation. Initial determination of eligibility was decided in relevant part as follows:
 

 (a) A claimant ... shall file a claim on or before June 30, 2014, by filing the Claim for Compensation under the [Compensation Program] with the Office of Justice for Sterilization Victims [ (the "Office") ]. The form shall request the following information:
 

 (1) the claimant's current name, mailing address, county, email address, phone numbers;
 

 (2) if applicable, the claimant's maiden name;
 

 (3) the claimant's birthdate;
 

 (4) the claimant's full name at time of procedure;
 

 (5) the claimant's nickname or alias at time of procedure;
 

 (6) the estimated date or year of procedure;
 

 (7) the county of residence at time of procedure;
 

 (8) the name of facility where procedure was performed;
 

 *448
 
 ....
 

 (b) The Commission
 
 will not dismiss a claim solely because all of the information listed in Subparagraph (a)(1)-(9) is not submitted
 
 .
 

 (c) The Office ... shall search the program records for the North Carolina Eugenics Board and collect the following documentation
 
 as available
 
 :
 

 (1) Petition for Operation of Sterilization or Asexualization;
 

 (2) Order for Operation of Sterilization;
 

 (3) Certificate of Surgeon;
 

 (4) Letter of Authorization to Surgeon;
 

 (5) consent of parent, guardian, spouse, or next of kin;
 

 (6) minutes of proceedings of the Eugenics Board;
 

 (7) proof of any search efforts of the [Office];
 

 (8) other pertinent records; and
 

 (9) any other evidence submitted by the claimant.
 

 The Office ... shall complete and transmit the Claim for Compensation under the [Compensation Program] along with the available documentation to the Industrial Commission. The Industrial Commission shall provide a copy of the Claim for Compensation under the [Compensation Program]
 
 along with the available documentation
 
 to the claimant upon receipt from the Office[.]
 

 (d)
 
 The Commission shall make an initial determination of eligibility for compensation by filing a written decision
 
 .
 

 4 N.C.A.C. 10K.0201 (emphasis added).
 

 This rule simply states that the claimant and the Office shall collect as much relevant evidence and documentation as possible in order for the Industrial Commission to conduct its review. There is nothing indicating that the Industrial Commission was prohibited from determining that a claimant was eligible based upon evidence that did not include records from the Eugenics Board. Further, "[i]n the interests of justice ... the Commission may, except as otherwise provided by the rules in this Subchapter, waive or vary the requirements or provisions of any of
 
 *449
 
 the rules in this Subchapter in a case pending before the Commission upon written application of a claimant[.]" 4 N.C.A.C. 10K.0501. Because we find nothing in the Eugenics Act, nor in the temporary rules promulgated by the Industrial Commission, that required documentation from the Eugenics Board as the only method of proof of eligibility, we reject Claimant's argument. We further note that an absence of documentation at the Eugenics Board could potentially indicate that a claimant was sterilized pursuant to the actions of a county, and not pursuant to "the authority of the Eugenics Board of North Carolina in accordance with Chapter 224 of the Public Laws of 1933 or Chapter 221 of the Public Laws of 1937."
 
 *377
 
 N.C.G.S. § 143B-426.50. Although a sterilization not performed pursuant to the authority of the Eugenics Board would likely have been unlawful, compensation pursuant to the Compensation Program would still have been unavailable.
 
 House I
 
 , --- N.C. App. at ----,
 
 782 S.E.2d at
 
 120 ;
 
 House II
 
 , --- N.C. App. at ----,
 
 808 S.E.2d at 326
 
 (reaffirming our opinion in
 
 House I
 
 ).
 

 c. Equal Protection
 

 Assuming,
 
 arguendo
 
 , that Claimant has argued a cognizable equal protection argument, that argument fails. This Court rejected an equal protection argument involving the Compensation Program in
 
 In re Hughes
 
 , --- N.C. App. ----,
 
 801 S.E.2d 680
 
 (2017) ("
 
 Hughes II
 
 ").
 
 [6]
 
 As this Court has stated:
 

 The Equal Protection Clause of Article I, Section 19 of the North Carolina Constitution and the Equal Protection Clause of Section 1 of the Fourteenth Amendment to the United States Constitution forbid North Carolina from denying any person the equal protection of the laws, and require that all persons similarly situated be treated alike.
 

 Id
 
 . at ----,
 
 801 S.E.2d at 685-86
 
 (citation omitted). We have thoroughly considered Claimant's argument and hold that, because she cannot demonstrate that she was sterilized pursuant to "the authority of the Eugenics Board of North Carolina in accordance with Chapter 224 of the Public Laws of 1933 or Chapter 221 of the Public Laws of 1937[,]" N.C.G.S. § 143B-426.50, she cannot demonstrate that she is similarly situated with claimants who were able to so prove.
 
 House
 
 , --- N.C. App. at ----,
 
 782 S.E.2d at
 
 120 ;
 
 House II
 
 , --- N.C. App. at ----,
 
 808 S.E.2d at 326
 
 .
 

 *450
 
 Therefore, Claimant's equal protection argument must fail. We affirm the 14 May 2015 decision and order of the Full Commission.
 

 AFFIRMED.
 

 Judges MURPHY and ARROWOOD concur.
 

 [1]
 

 See
 
 In re Maye
 
 , --- N.C. App. ----,
 
 784 S.E.2d 237
 
 (2016) (unpublished) ("
 
 Maye I
 
 "), for a more detailed factual and procedural background of this case. In
 
 Maye I
 
 , this Court decided three appeals, including
 
 Maye I
 
 ; the present appeal,
 
 In re Davis
 
 ; and
 
 In re Staggers
 
 , COA15-883.
 
 See
 

 Maye I
 
 , --- N.C. App. ----, ----,
 
 784 S.E.2d 237
 
 . Claimant Davis was the only claimant from
 
 Maye I
 
 who petitioned our Supreme Court for discretionary review.
 

 [2]
 

 Hughes I
 
 itself, and two additional cases that were decided in the same opinion as
 
 Hughes I
 
 :
 
 In re Redmond
 
 ("
 
 Redmond I
 
 ") and
 
 In re Smith
 
 .
 
 See
 

 Hughes I
 
 , --- N.C. App. at ----,
 
 785 S.E.2d at 111
 
 .
 

 [3]
 

 We note that although the Remand Order limits our review on remand to constitutional issues pursuant to our Supreme Court's reasoning in
 
 Redmond II
 
 , not every opinion included in the Remand Order contains a constitutional issue.
 
 See
 

 House I
 
 , --- N.C. App. ----,
 
 782 S.E.2d 115
 
 . Therefore, we cannot presume that the mandate of the Remand Order is meant to require this Court to address the merits of every one of our opinions contained therein.
 

 [4]
 

 Absent utilization of the Declaratory Judgment Act. N.C.G.S. § 1-253 ("Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.").
 

 [5]
 

 The provisions of the Compensation Program are no longer in force except for those few cases that were properly initiated but have yet to reach final disposition, such as the present case.
 

 [6]
 

 Hughes II
 
 was decided after the reversal and remand of
 
 Hughes I
 
 by our Supreme Court.